(3 Misc. Rep. 358.)

## HANNON v. MOORE.

(City Court of New York, General Term.   April 14, 1893.)

MASTER AND SERVANT—EMPLOYMENT FOR YEAR—ACTION FOR WRONGFUL DIS-
CHARGE.

> In an action to recover for breach of a contract for a year's services
> the evidence showed that plaintiff was employed by defendant's foreman,
> by authority of defendant's superintendent. That, on being discharged,
> plaintiff said to defendant: "You are breaking your contract with me. I
> have been hired for a year, here, but I am discharged,"—to which defend-
> ant replied: "This is only temporary. Things are very dull, and you will
> be the very first one I will send for." And that, when plaintiff protested
> against the discharge, defendant said: "I won't be contradicted. You get
> out of the place." *Held*, that it was error to dismiss the complaint on the
> ground that there was no evidence to show that the person making the
> contract for defendant had authority to make it.

Appeal from trial term.

Action by George Hannon against John Moore to recover damages
for breach of a contract of employment.   From a judgment dis-
missing the complaint, plaintiff appeals.   Reversed.

Argued before McGOWN and VAN WYCK, JJ.

Johnson & Johnson, for appellant.

Henry W. Unger, for respondent.

McGOWN, J.   The plaintiff, in his complaint, alleges:   First.
That on or about the 1st day of April, 1891, the defendant entered
into an agreement with him, whereby defendant employed him as
a first-class mechanic or workman in his saddlery and harness busi-
ness for the term of one year from April 1, 1891, for which services
defendant agreed to furnish to the plaintiff all the work he could do,
and to pay him therefor at stipulated prices, at a certain fixed
scale, which was mutually agreed upon, for each piece of work
done by plaintiff.   Second.   That plaintiff performed his agreement
on his part, but that defendant has not performed said agreement,
in that he has not furnished plaintiff all the work he could do
from on or about September 12, 1891; that he has not paid plain-
tiff since September 12, 1891, although the same has been duly de-
manded, and although plaintiff has been always ready and will-
ing, and has tendered his services to the defendant,—to his dam-
age in the sum of $500.   The defendant, in his answer, denies each
and every allegation of the complaint.   The plaintiff testified that
he applied at defendant's place of business, in Warren street, for
work, in March, 1891, and saw defendant's superintendent, Cyrus
Beasley.   That he worked for defendant until he was offered coach
harness, and was working by the piece then.   That when he ap-
plied for work he saw the superintendent, who called the fore-
man, Mr. Acker, who stated that he (the superintendent) would
not undertake to hire him, himself, not being a harness maker.
That Acker (the foreman) asked him (plaintiff) where he had
worked, and what quality of work he could do.   That Acker (the
foreman) told him that he (plaintiff) was the man he wanted, and

to go to work. That he worked there three weeks or a month, when he heard it was not going to be a permanent job. That he got an offer for a permanent job, and that the foreman (Acker) had given him two sets of harness to make. That he told Acker that he would not take it, because he heard that this job was not to be permanent, but that, if he (plaintiff) could get a permanent job, then he would stay. That he (Acker) said, "Wait a little, and I will go down and see about it." That Acker went down stairs, and came back, and said: "That is all right. You are employed here for a year." That he worked up to the first or second week in September following. That this conversation between himself and Acker (the foreman) was in the first week in April. That, in the second week in September, Acker (the foreman) told him that some of the people had been laid off, and, when he (plaintiff) had his job done, that he (plaintiff) was laid off, also, and that there was no more work for him. That he (plaintiff) then went down, and saw the defendant himself, and said to him: "How is this, Mr. Moore? You are breaking your contract with me. I have been hired for a year, here, but I am discharged." That defendant then said: "This is only temporary. Things are very dull, and you will be the very first one I will send for." That his average earnings per week, while he worked for defendant, amounted to from $15 to $21 per week. That, when he protested with defendant about the contract, defendant said: "I won't be contradicted. You get out of the place." Levi J. Acker, a witness on the part of the plaintiff, testified that in the month of March, 1891, he was foreman of the defendant; that he had authority to employ men; that he employed the plaintiff for a year. On cross-examination he testified that he was never, in any way, shape, or form, authorized, for the defendant, to engage anybody for the defendant for the year, except through the superintendent, Mr. Beasley, through whom he promised plaintiff work for the year round; that plaintiff was going to leave the firm, and told him that he was going to get work for a year with another firm, and that he went and saw Mr. Beasley, (the superintendent,) and told him, and that he (Beasley) said: " 'If the man suits you, you can tell him he can have work for the year round.' He said to me that he could have work for the year round, and I told him [plaintiff] afterwards that he would have work there for the year round." Plaintiff having rested, defendant's counsel moved to dismiss, on the following grounds:

"Defendant's Counsel: I move for a dismissal of the complaint upon the ground: First. That no employment of the plaintiff, as recited in the complaint, has been shown. The evidence of the plaintiff distinctly shows that he was to be employed if he were found suitable. Second. There is nothing in the evidence to show that, even if such a contract was made, it was made by the authority of the defendant. The Court: I grant the motion to dismiss the complaint upon the grounds that there is no evidence of a contract between the plaintiff and defendant, as testified to by the foreman, Mr. Acker; and, further, upon the evidence of the plaintiff himself, which shows that this employment was made through a servant of Mr. Moore; the plaintiff contending that this servant who made the contract had the right to make it for one year. There is no evidence tending to show that the person who made the contract had a right to make it for a period of one year; and, as

the contract was made through an agent, the familiar principle of law is applicable to this case, namely, that the authority of the agent must be shown, of which there is no evidence in this case. Therefore I dismiss the complaint. (Plaintiff's counsel excepts.)"

The trial justice, in granting defendant's motion to dismiss, fully and clearly stated the grounds upon which he granted the motion; and it will not be necessary, for the purposes of the appeal herein, to review any other questions except those raised by the opinion of the trial justice, and stated by him as his reasons for granting the motion. It was error on the part of the trial justice, in dismissing the complaint, and we think he should have allowed the plaintiff to go to the jury upon the evidence produced by him. In Ernst v. Railroad Co., 35 N. Y., at page 25, Porter, J., says:

"In determining the propriety of a nonsuit, we are legally bound to assume the truth of the facts which the testimony of the plaintiff legitimately conduced to prove, though their correctness be controverted by the defendant's witnesses. It is the appropriate province of the jury to deduce inferences of fact, and to weigh doubtful or conflicting evidence."

Plaintiff claims employment through Mr. Beasley, the superintendent, and not through Acker, the foreman. There is no dispute as to the fact of Beasley being the superintendent of defendant; and the fact that he was the superintendent carried with it the necessary implication—throwing the burden upon the defendant to disprove the same—that he had authority, in the premises, to hire men by the year, or otherwise, as he saw fit; and this circumstance was sufficient to authorize the submission to the jury of the question as to the authority of the superintendent to employ the plaintiff. See Manning v. Hogan, 78 N. Y. 616. When plaintiff, as testified to by him, said to the defendant: "How is this, Mr. Moore? You are breaking your contract with me. I have been hired for a year here, but I am discharged,"—he (defendant) said: "This is only temporary. Things are very dull, and you will be the very first we will send for." And, when plaintiff protested with defendant about the contract, defendant said: "I won't be contradicted. You get out of the place." Defendant did not deny the employment, or claim that his superintendent, Beasley, had no authority to make such contract of employment; and it might fairly have been claimed that the omission of the defendant to deny or disclaim any such authority was very strong evidence of its existence, and, taken in connection with other circumstances of the case, it would have amply sufficed for the finding by the jury of the existence of such authority. See Warburton v. Camp, 112 N. Y. 684, 20 N. E. Rep. 592. The plaintiff, on the evidence presented by him, had made out a prima facie case, and one which he was entitled to have a jury pass upon. A similar question arose, and was passed upon by the general term of the supreme court, third department, in Cox v. Brewing Co., 6 N. Y. Supp. 841. Cox, the plaintiff, claimed damages for breach of contract for plaintiff's personal services for one year. He served ten weeks and one day, and was then discharged, being paid up in full for the term of his actual services. Cox, the plaintiff, went to defendant's brewery, and into the office of the defendant, and found

one William Gray there behind the counter, alone, apparently in charge. Gray asked him to come to work on Monday following. Rowe, the defendant's superintendent, came in, and also asked him to come. Plaintiff went there Monday morning, and Gray asked him to go to the malt house, and work there a week, and help the maltster show the green hands how to work the malt. Cox at first refused to work at the malt house, and left the office. Gray followed him out, and said: "Cox, if you will come down to the malt house for 2 or 3 days, and help Farrel show the green hands how to do the work, I will guaranty you a year's work at $2 per day." Cox said, "I will work until Saturday night, and come back Monday." He then went to the malt house, and worked there until Saturday night; came back on Monday morning following, when Gray directed him to go to the shipping room, which he did, and worked there, under the direction of defendant's superintendent, for nine weeks and one day. Gray then directed him to go to the office and get his pay, and he did so. He then went on the following morning to apply for work, and said to Gray, "How is it that you hired me for a year?" And Gray told him to get out of the office, and not come any more, and added, "I suppose you mean to take suit against me." Landon, J., in his opinion, says:

"The plaintiff was nonsuited. He is therefore entitled to the most favorable inferences of which the testimony admits. He dealt with the person whom the defendant permitted to be its representative in its dealings with the plaintiff, from and including the time of his employment, * * * and with and including his payment and discharge. As between the parties, Gray was the ostensible agent of defendant, and clothed with all the power he assumed to exercise. Besides, there is no intimation in the evidence that his real power was not as ample as his ostensible. The jury might have found that the defendant did employ the plaintiff for one year at $2 a day."

The judgment was reversed. Learned, P. J., and Ingalls, J., concurred. The case came up again before the court on the appeal from a judgment in the plaintiff's favor on the new trial ordered. See 10 N. Y. Supp. 213. Mayham, J., in his opinion, at page 214, said:

"It is a well settled and elementary rule of law that a special agent, with limited powers, cannot bind the principal, where he acts outside of the scope of his authority, but that rule is subject to this qualification: That, when an agent is intrusted to do a particular kind of business, he becomes, as between the principal and parties dealing with him, the general agent for the transaction of that business; and his acts, as between his principal and strangers, in that particular line, will bind the principal, although he violates some private instructions given by his principal, not known to the public."

See, also, Schmerenbeck v. Funke, (Sup.) 17 N. Y. Supp. 717; Benesch v. Insurance Co., (Com. Pl. N. Y.) 11 N. Y. Supp. 714; Fuld v. Brewing Co., (Com. Pl. N. Y.) 18 N. Y. Supp. 456.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant, to abide the event.